**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ROBERT D. WHITTAKER, III      *

           *

 Plaintiff         *   Civil No.: BPG-21-2108

 v.            *

HOWARD COUNTY, MARYLAND, et al.  *

 Defendants        *

\* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

Currently pending before the court are defendant's Motion for Summary Judgment ("defendant's Motion") (ECF No. 25), plaintiff's Response to Defendant's Motion for Summary Judgment ("plaintiff's Response") (ECF No. 31), and defendant's Reply to Plaintiff's Response to Defendant Howard County's Motion for Summary Judgment (ECF No. 41). The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed herein, defendant's Motion for Summary Judgment (ECF No. 25) is granted.

**I. <u>BACKGROUND</u>**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the non-moving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007). In 2018, at age 46, Robert Whittaker ("plaintiff") applied for a firefighter position with the Howard County Department of Fire and Rescue Service (the "Department"). (ECF No. 31 at 1). Plaintiff successfully passed all disqualifiers, a written test, a Candidate Physical Agility Test, a panel interview, a background check, a psychological examination, and a physical examination, and was selected for the Department's Training Academy, Training Class

30 (the "Academy").  (Id. at 5-6).  Plaintiff began his employment as a trainee with the Department on January 28, 2018.  (Id. at 5).

The Academy consists of training in Emergency Vehicle Operator, Ice Rescue Operations, Emergency Medical Technician, Fire Dynamics, Firefighter 1 and Firefighter 2 units.  (Id. at 8). During the course of plaintiff's time in the Academy he passed all objective criteria necessary to become a firefighter.  (Id. at 7).  Plaintiff never received a demerit through the County's "specific and detailed Demerit System for documenting demerits that might ultimately lead to termination." (Id. at 9).  Plaintiff's fellow trainees, many of whom are now firefighters, observed no deficiencies in plaintiff's performance during the academy and recall that he was a good classmate.  (Id. at 8).

Plaintiff completed the Emergency Medical Technician portion of the Academy, after which he advanced to Firefighter 1 training.  (Id. at 8).  On April 19, 2018, plaintiff suffered a knee contusion while training and was placed on desk duty.  (Id. at 27).  While on desk duty, plaintiff was confined to the administrative building and was not permitted to observe the other trainees or enter the classroom where the other trainees were learning.  (Id.)  On May 3, 2018, plaintiff received his Certificate of Completion indicating that he "passed all examinations and satisfactorily completed all course work in Firefighter 1."  (Id.)  Plaintiff was the only applicant over 40 years old to be hired and complete Firefighter 1.  (Id. at 5).  On May 21, 2018, plaintiff received his Certificate of Completion indicating that he "passed all examinations and satisfactorily completed all course work in Firefighter 2."  (Id. at 8).  At some point while plaintiff was in the Academy, Captain Welsh, one of the Academy training staff, told plaintiff "you don't do half bad for an old guy."  (ECF No. 35-1 at ⁋ 24).  On May 18, 2018, trainers from the Academy recommended that plaintiff be terminated from his probationary employment as a result of his failure to meet the standards required of Department trainees.  (Id. at 9).  On May 24, 2018, plaintiff

was formally terminated by the Fire Chief.  (Id.)  At the time of his termination, plaintiff was the oldest trainee in the Academy.  (Id. at 1).  On November 15, 2019, a year and a half after plaintiff's termination, Captain Merson made a Facebook post, which discussed an article about a 51-year-old trainee in a Milwaukee fire department and criticized departments for hiring older trainees. (Id. at 30-31).

On September 11, 2018, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that his termination was the result of unlawful age discrimination.  (ECF No. 1 at ¶17).  Upon receipt of his right to sue letter, plaintiff filed suit in this court.  Plaintiff asserts a single count in his Complaint: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  (Id. at ¶ 35).  Defendant filed the pending Motion for Summary Judgment, stating that there are no material facts in dispute and defendant is entitled to judgment as a matter of law because plaintiff cannot establish a prima facie case of discrimination and, even if he could, there is a non-discriminatory reason for plaintiff's termination.  (ECF No. 25).  Plaintiff responds that there is both direct and indirect proof of age discrimination and that defendant's reasons for terminating plaintiff are pretextual.  (ECF No. 31).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id. The party moving for summary judgment has the burden of demonstrating the absence of any

genuine issue of material fact.  Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co., Inc. v. Cameo Props.</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  <u>Anderson</u>, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  <u>Celotex</u>, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  <u>Anderson</u>, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  <u>Cox v. Cnty. of Prince William</u>, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 252.

III.     <u>**DISCUSSION**</u>

Defendant moves for summary judgment on plaintiff's Age Discrimination in Employment Act ("ADEA") claim, arguing that plaintiff has not established a prima facie case of discrimination, either through direct or indirect evidence of age discrimination.  (ECF No. 25-1).  Specifically, defendant argues that plaintiff cannot establish a prima facie case of age discrimination because plaintiff has not offered evidence that he met the Department's legitimate expectations, or that plaintiff received disparate treatment giving rise to an inference of unlawful discrimination.  (<u>Id.</u> at 19).  Further, defendant argues that even if plaintiff were able to prove a prima facie case, defendant had legitimate, non-discriminatory reasons for terminating him, and plaintiff cannot demonstrate that defendant's reasons for terminating him were a pretext for discrimination.  (<u>Id.</u> at 24).  Plaintiff disputes many of the facts upon which defendant bases its assertion that plaintiff did not meet defendant's performance expectations, arguing that plaintiff performed well on all objective tests, that other trainees believed he was performing competently, and that he was treated differently from younger trainees in such a way that permits an inference of discrimination.  (ECF No. 31 at 5-9).

The ADEA, which protects individuals who are 40 years of age or older, prohibits employers from "fail[ing] or refus[ing] to hire. . . any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a) (1).  To succeed on an ADEA claim, plaintiffs "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision."  <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 177-78 (2009).  To prove age discrimination by direct evidence, such as derogatory statements about age, the plaintiff must offer "evidence of conduct

or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Warch v. Ohio Cas. Inc. Co., 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted).  In the absence of direct evidence of discrimination, a plaintiff's claim is evaluated under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Pursuant to the McDonnell Douglas framework, plaintiff establishes a prima facie case of discriminatory termination by demonstrating that: "(1) he is a member of a protected group; (2) he suffered an adverse employment action; (3) he was meeting the employer's legitimate expectations at the time of the adverse employment action; and (4) the employer treated younger employees more favorably." White v. BFI Waste Servs. LLC, 375 F.3d 288, 295 (4th Cir. 2004).  After the plaintiff establishes a prima facie case, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802.  If the defendant offers a non-discriminatory reason for its actions, the burden returns to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Plaintiff contends that he can establish the elements of an age discrimination claim through both direct evidence and the McDonnell Douglas burden-shifting framework.  (ECF No. 31 at 23, 30).

**A. Direct Evidence of Age Discrimination**

Plaintiff offers two statements as direct evidence of age discrimination: (1) Captain Welsh's reference to Mr. Whittaker as "an old guy";[1] and (2) a November 15, 2019 Facebook post

---

[1] Neither party provides a date for this incident.  Defendant suggests that Captain Welsh referred to plaintiff as "an old guy" shortly after plaintiff began Firefighter 1 training.  (ECF No. 25-1 at 27).  Plaintiff merely asserts that the statement was made during plaintiff's time at the Academy.  (ECF No. 35-1 at ₱ 24).

by Captain Merson in which Captain Merson criticized the hiring of a 51-year-old "rookie" firefighter in Milwaukee. (ECF No. 31 at 30). Defendant contends that neither statement occurred close enough in time to plaintiff's termination to constitute direct evidence that the termination was the result of unlawful age discrimination. (ECF No. 25-1 at 27-28). Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." Gott v. Town of Chesapeake Beach, Md., 44 F. Supp. 3d 610, 615 (D. Md. 2014) (quoting Johnson v. Mechs. & Farmers Bank, 309 Fed. App'x. 675, 681 (4th Cir. 2009). "[C]ourts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." Davenport v. Anne Arundel Cnty. Bd. of Educ., 998 F. Supp. 2d 428, 433 (D. Md. 2014)). The Fourth Circuit has adopted the Fifth Circuit's test, articulated in Jackson v. Cal-Western Packaging Corp., 602 F.3d 374 (5th Cir. 2010), to determine whether derogatory comments are direct evidence of age discrimination. Bandy v. City of Salem, Virginia, 59 F.4th 705, 712 (4th Cir. 2023).[2] Under the test adopted by the Court in Bandy, derogatory comments constitute direct evidence of discrimination if they are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." Id. (quoting Jackson, 602 F.3d at 380).

**i. Captain Welsh's Comment**

Plaintiff contends that Captain Welsh's comment—"you don't do half bad for an old guy"—is indicative of defendant's tendency to treat plaintiff differently from other trainees, and

---

[2] The Fourth Circuit's decision in Bandy v. City of Salem, Virginia was issued subsequent to the parties' submissions in this case, and therefore neither party had the benefit of this opinion in preparing their filings. Nonetheless, because the parties' discussion tracks the elements adopted by the Fourth Circuit in Bandy, the court considers the parties' arguments with reference to the elements of the Bandy test.

therefore, constitutes direct evidence of age discrimination.  (ECF No. 31 at 30).  Defendant argues that Captain Welsh's remark is not derogatory and occurred several months prior to plaintiff's termination, such that the comment does not constitute direct evidence of age discrimination. (ECF No. 25-1 at 27).  The first and third elements of the <u>Bandy</u> test are clearly established.  As to the first element, Captain Welsh's reference to plaintiff as "an old guy" implicates the protected class of persons of which plaintiff is a member (<u>i.e.</u>, adults over age 40).  As to the third element, Captain Welsh had at least some authority over the decision to terminate plaintiff and recommended that plaintiff be terminated, although the ultimate decision was left to Fire Chief Burton.  (ECF No. 25-4 at 3).

Defendant asserts that Captain Welsh's comment does not satisfy the second or fourth element of the <u>Bandy</u> test.  As to the second element, defendant argues that Captain Welsh's comment was not made in close temporal proximity to plaintiff's termination.  (<u>Id.</u> at 27).  As explained above, it is unclear precisely when Captain Welsh made this comment to plaintiff. Defendant maintains that the comment was made "shortly after [plaintiff] started Firefighter 1, during breathing apparatus training."  (<u>Id.</u> at 4).  Based upon the record, plaintiff likely began Firefighter 1 training in early April 2019.[3]  Plaintiff was terminated on May 24, 2019.  (ECF No. 31 at 9).  Thus, Captain Welsh's comment was made less than two months prior to plaintiff's termination, and therefore, was proximate in time to plaintiff's termination.  <u>See</u> <u>Bandy</u>, 59 F.4th at 711 (employer's comment, made only weeks before adverse employment action, was proximate in time to challenged adverse action).

Although a factual issue may exist as to the second element, plaintiff has failed to establish a dispute as to the fourth element.  Defendant argues that plaintiff fails to establish a nexus between

---

[3] Firefighter 1 training is a 108-hour program condensed into four weeks.  Plaintiff received his final certificate of completion of Firefighter 1 training on May 3, 2019.  (ECF No. 25-1 at 3).

Captain Welsh's isolated comment and defendant's decision to terminate plaintiff sufficient to establish the fourth element of the <u>Bandy</u> test.  (<u>Id.</u> at 28).  It is well settled that remarks about age that are not directly connected with the decision-making process do not reflect discriminatory intent sufficient to prove an ADEA claim.  <u>Mott v. Accenture, LLP</u>, No. PX-17-231, 2019 WL 1934727, at *11 (D. Md. Apr. 29, 2019) ("[W]ith respect to age discrimination, '[n]ot all age-related statements . . . are categorized as direct evidence.'") (internal citation omitted).  Indeed, "to prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination."  <u>Id.</u>  (employer's comment that plaintiff was "on the back nine" of his career, while a reference to plaintiff's age, was not sufficient to constitute direct evidence without evidence that it was "fueled by discriminatory animus").  The mere fact that Captain Welsh's isolated comment referred to plaintiff's age is insufficient to establish direct evidence of discriminatory animus.  Captain Welsh's comment is unrelated to the Department's decision to terminate plaintiff.  Even when viewed in the light most favorable to plaintiff, Captain Welsh's comment is not direct evidence of age discrimination as there is no evidence that his comment was related to plaintiff's termination.  Accordingly, plaintiff has failed to generate a factual dispute that Captain Welsh's remark is direct evidence of age discrimination.

### ii. **Captain Merson's Facebook Post**

Plaintiff next relies on a Facebook post authored by Captain Merson on November 15, 2019, nearly one-and-a-half years after plaintiff's termination, as evidence of discriminatory attitudes which resulted in plaintiff's termination. (ECF No. 31 at 30).  Defendant contends that the Facebook post does not create an inference of age bias because it was made after plaintiff's termination, Captain Merson was uninvolved in plaintiff's training, and the post "was simply

9

noting a generational passing: the truism that people gradually get too old to do some physical tasks." (ECF No. 25-1 at 28-29). On November 15, 2019, Captain Merson shared a link to an article titled "The 51-year-old rookie from Milwaukee," about the oldest person to complete recruit school in the Milwaukee Fire Department, accompanied by the following text:

> I will never understand this. It has nothing to do with a 51-year-old not being able to do the job. I'm pushing 50 and I'm on the way out. In my opinion it's irresponsible. One of, if not the leading cause of firefighter fatalities is cardiac related. Yet fire departments all over the country hire personnel in prime heart attack years. The earliest retirements are 20 years. We are asking these people to work until they are 70 in a field that will probably kill them. There is no way a department or community will get the return on this employee. They are endangering him, his fellow firefighter[s] and the citizens he has sworn to protect. But it does make for a good Facebook post. And that's what it's all about.

(Id. at 16-17). Captain Merson's post, at most, satisfies only the first element of the Bandy test articulated above, that is, the comment relates to the protected class of persons of which plaintiff is a member. Bandy, 59 F.4th at 712. Captain Merson's post remarks on what he believes is an inappropriate age for a recruit, and thus refers to the protected class to which plaintiff belongs. None of the other Bandy factors, however, are met as it relates to Captain Merson's post.

As to the second element, Captain Merson's Facebook post was not proximate in time to plaintiff's termination. Captain Merson's post was made nearly a year and a half after plaintiff's termination. Cf. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) (statement made roughly two years before adverse employment action too remote to use as direct evidence of age discrimination). Further, Captain Merson's post was not made until long after plaintiff was terminated, and therefore, is too remote to constitute direct evidence of age discrimination in plaintiff's termination. See Clay v. United States Parcel Serv., Inc., No. SAC-13-2240, 2014 WL 5298173, at *9 (D. Kan. Oct. 15, 2014) (defendant's comment was made after [p]laintiff was terminated and does not raise an inference of discrimination before or at the time of termination.");

10

Moody v. U.S. Sec'y of the Army, 72 Fed. App'x 235, 239 (5th Cir. 2003) ("all of the remarks occurred well after the [challenged adverse employment action], and thus cannot be evidence of discriminatory motive").  As to the third element, plaintiff asserts that Captain Merson has "a direct relationship to the [A]cademy," but offers no evidence that Captain Merson had authority over the decision to terminate plaintiff.  (ECF No. 31 at 30).  To the contrary, Captain Merson took no role in the decision to terminate plaintiff, and instead deferred to the recommendations of other trainers who were more familiar with plaintiff's performance.  (ECF No. 41 at 14).

As to the fourth element, plaintiff must offer evidence to establish the relationship between Captain Merson's Facebook post and plaintiff's termination.  To constitute direct evidence, plaintiff must demonstrate that Captain Merson's comment "bear[s] directly on the contested employment decision."  Gott, 44 F. Supp. 3d at 615.  To the contrary, Captain Merson's Facebook post does not refer to plaintiff or plaintiff's termination, but rather concerns an article wholly unrelated to plaintiff.  As noted above, Captain Merson's post was made long after the decision to terminate plaintiff.  Further, the fact that a comment refers to age is insufficient to establish direct evidence of discrimination.  See Mott, 2019 WL 1934727, at *11 ("[n]ot all age related statements" are evidence of age discrimination, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, [ ] constitute direct evidence of discrimination.") (internal citation omitted).  In sum, plaintiff has failed to demonstrate that Captain Merson's Facebook post is direct evidence of age discrimination.  Accordingly, to succeed on his claim, plaintiff must establish a prima facie case of discrimination using the McDonnell Douglas burden shifting scheme.

## B. **Indirect Evidence of Age Discrimination**

The McDonnell Douglas test requires plaintiff to demonstrate that: (1) plaintiff is over 40 years of age; (2) plaintiff was subjected to an adverse employment action; (3) plaintiff had satisfactory job performance at the time of the adverse action; and (4) that similarly situated employees outside the protected class received more favorable treatment. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004) (applying McDonnell Douglas to plaintiff's age discrimination claim). The parties do not dispute that plaintiff satisfies the first two elements of a prima facie case. (ECF Nos. 25-1 at 19, 31 at 3). Plaintiff—who is over the age of 40—is a member of the protected group of people over the age of 40, and suffered an adverse employment action when he was terminated from the Academy. Defendant argues, however, that plaintiff fails to establish the third and fourth elements of a prima facie case because plaintiff has not established that he was meeting the Department's legitimate expectations at the time he was terminated and has failed to identify similarly situated non-members of the protected class who were treated more favorably. (ECF No. 25-1 at 19-24). Plaintiff responds that he was treated more harshly than younger trainees in the Academy and that there are significant disputes of material fact precluding summary judgment. (ECF No. 31 at 33).

### i. **The Department's Legitimate Expectations**

As to the third element of a prima facie case, defendant contends that plaintiff cannot establish that he was meeting the Department's legitimate expectations at the time of his termination because he lacked the skills necessary to become a firefighter, behaved in an insubordinate manner, quit tasks, and presented a risk to himself and other members of the Academy. (ECF No. 25-1 at 20). Plaintiff maintains that there is a genuine dispute of material fact regarding whether plaintiff was meeting the Department's legitimate expectations at the time

of his termination.  (ECF No. 31 at 9-22).  The ADEA does not "require an employer to adopt a life of economic altruism and thereby immunize protected class members from discharge or demotion despite their poor performance."  Dockins v. Benchmark Comm., 176 F.3d 745, 750 (4th Cir. 1999).  Indeed, the role of the court is not to determine whether the employer's decision to terminate plaintiff was sound, but rather the court's "sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory."  Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) (internal citation omitted).  "[B]ecause it is the plaintiff's burden to persuade the trier of fact that he met his employer's legitimate [ ] employment expectations, at the prima facie stage [the court] must consider the employer's evidence that the employee was not meeting those expectations."  Arthur v. Pet Dairy, 593 Fed. App'x 211, 217 (4th Cir. 2015) (internal citation omitted).

Plaintiff, relying on his own affidavit, contends that he satisfied all objective criteria and, although he sometimes failed to complete a task on the first attempt, requiring multiple attempts at a task was common and he performed exercises proficiently on subsequent attempts.  (ECF Nos. 31 at 11-21, 35-1).  Additionally, plaintiff argues that other members of the Academy observed no performance deficiencies on his part and believed he was a good classmate.  (ECF No. 31 at 8). Defendant, on the other hand, offers Student Counseling/Status Report Forms and contemporaneous email exchanges between Academy trainers as evidence that plaintiff was not meeting the Department's legitimate expectations at the time of his termination.  (ECF Nos. 25-8 to 25-18).  Specifically, defendant identifies numerous examples of plaintiff's poor performance.

First, plaintiff received a Student Counseling/Status Report Form regarding his performance on April 13, 2018, in which plaintiff was unable to complete a ladder climbing scenario and requested permission to evacuate into the interior of the structure because he was

unable to descend on the ladder. (ECF No. 25-6).  Second, Captain Smeltzer sent an internal memorandum to Captain Welsh regarding plaintiff's performance on April 17, 2018, in which plaintiff struggled to climb a 28-foot extension ladder in his gear, was unable to transition to the "fly section" of the ladder, and was unwilling to perform a "leg lock" as required.  (ECF No. 25-7).  Plaintiff concedes that he did not pass the first ladder exam, but maintains that he "thereafter passed every ladder drill and successfully performed on ladders."  (ECF No. 35-1 at ¶¶ 20-21).  Third, Captain Redd sent an internal memorandum to Captain Welsh on April 17, 2018, stating that plaintiff was unable to complete a maze evolution and "became disoriented at two locations within the maze" before requesting a "MAYDAY."  (ECF No. 25-8).  Plaintiff states that it was common for trainees to struggle with mazes and while he did not pass the maze on his first attempt, he was not nervous, did not have anxiety, and did not become subordinate, and thereafter passed the maze and all subsequent mazes. (ECF No. 35-1 at ¶ 6).  Fourth, plaintiff received a Student Counseling/Status Report Form on May 3, 2018, regarding plaintiff's failed first attempt of the Firefighter 1 practical exam when he was unable to ascend to the roof of a building.  (ECF No. 25-14).  Plaintiff was able to complete the task on the second attempt.  (Id.)  Fifth, Captain Redd sent Captain Welsh an internal memorandum regarding incidents on May 16, 2018 and May 17, 2018 in which plaintiff forgot to attach his Self-Contained Breathing Apparatus (SCBA) twice before entering a burning structure.  (ECF No. 25-15).  Plaintiff states that he did not fail to attach his breathing apparatus but rather "self-corrected before entering the interior of the building" without his mask on, followed protocol for when to connect the breathing apparatus, and received no counseling on his failure to attach the breathing apparatus.  (ECF No. 35-1 at ¶¶ 4-5).

Sixth, Instructor Paul sent an internal memorandum to Captain Welsh regarding an incident on May 17, 2018, in which plaintiff made several critical errors during an evolution, including that

he was (1) unable to open the bale of a hose nozzle, (2) had the improper nozzle pattern selected, (3) was unable to maintain orientation in the structure, (4) was unable to follow directions, and (5) was unable to locate fire in the structure.  (ECF No. 25-16).  Plaintiff objects to defendant's characterization of events and suggests that he was not the "nozzle person," and therefore, should never have been asked to enter the building and assume control over the nozzle, because to do so was against his training and a danger to his safety and the safety of the other trainees.  (ECF No. 35-1 at ⁋⁋ 7-11).  Finally, on multiple occasions throughout the course of the Academy, trainers commented on plaintiff's tendency to become flustered, quit tasks, display extreme anxiety, and behave insubordinately when faced with a stressful task or given critical feedback.  (ECF Nos. 25-8, 25-9, 25-14, 25-16, 25-17, 25-18, 25-19).   Plaintiff asserts simply that he "was not 'insubordinate' with the training staff."  (ECF No. 35-1 at ⁋ 22).

To the extent plaintiff relies on the fact that he passed all objective requirements, defendant does not dispute that plaintiff successfully completed the objective assessments, but rather contends that completion of the objective assessments alone is insufficient to meet the legitimate expectations of the Department.  (ECF No. 41 at 1).  Several trainers, including Captain Redd, remarked that while "[plaintiff] was successful with the minimal requirements set by University of Maryland Fire & Rescue Institute to pass Firefighter 1, [plaintiff] still demonstrates poor performance when expected to conduct those same skill sets under stress in a team environment, merged with additional tasks."  (ECF No. 25-18).  Captain Welsh commented that "[plaintiff] has shown acceptable progress in the academic portion of the course, effectively processing the information.  However, when he is required to perform those very tasks in a real life scenario he becomes frustrated and insubordinate."   (ECF No. 25-19).   Assistant Chief Sanchez, in recommending plaintiff's termination, stated that "although performing at a minimal level

academically, [plaintiff's] overall proficiency and behavior do not embody the principle to which this Department holds its prospective academy class graduates." (ECF No. 41-4).

Plaintiff disputes defendant's evidence, and contends that he was meeting defendant's legitimate expectations, relying solely on his own assessment of his performance and the opinions of his fellow trainees as evidence of his performance. (ECF Nos. 31 at 11-20, 35-1). As detailed above, defendant offers substantial evidence to support its position that plaintiff was not meeting the Department's legitimate expectations, including Student Counseling/Status Report Forms signed by plaintiff, contemporaneously prepared internal memoranda describing the incidents, and deposition testimony from training staff. (ECF Nos. 25-6 through 25-9, 25-14 through 25-19). Ultimately, it is defendant who is responsible for setting its performance expectations. See King v. Rumsfeld, 328 F.3d 145, 149-50 (4th Cir. 2003) (as long as the requirements imposed by the employer are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers). As defendant correctly notes, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Hawkins, 203 F.3d at 280. Indeed, plaintiff's "self-assessment" is irrelevant, and the "opinions of [plaintiff's] co-workers as to the quality of [his] work are similarly 'close to irrelevant.'" Id. (quoting DeJarnette, 133 F.3d at 299). Here, the court concludes that plaintiff's affidavit is insufficient to generate a genuine dispute of material fact in that it conclusorily denies some of the incidents cited by defendant.[4] See Wai Man Tom v. Hospitality Ventures, LLC, 980 F.3d 1027, 1037 (4th Cir.

---

[4] Plaintiff does not deny that he was unable to complete ladder and maze exercises on the first attempt, nor does he deny that he failed the Firefighter 1 practical exam on the first attempt. (ECF No. 35-1 at ¶¶ 6, 20). Instead, plaintiff contends that it was common to fail these exercises on the first attempt and second attempts were freely given, such that any negative consequences of his initial failures should be attributed to discriminatory animus. (Id. ¶¶ 6, 20-21). While plaintiff does deny that some of the incidents took place, including his failure to connect his SCBA mask and his insubordination, plaintiff offers no evidence, other than his own affidavit, to counter defendant's evidence. (Id. at ¶¶ 4-5, 22).

2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion.").

Moreover, to the extent plaintiff relies on the opinions of his fellow trainees, none of the trainees stated that the incidents cited by defendant did not occur, but rather offered general observations that plaintiff "met all the needs, like the rest of us did," and "[s]eemed fine just like every – everybody else."  (ECF Nos. 31-6 at 3, 31-7 at 3).  These generic opinions, coupled with plaintiff's belief that he was performing well and his termination was the result of unlawful age discrimination, are insufficient to generate a genuine dispute as to whether plaintiff was meeting the Department's legitimate expectations.  See Goldberg v. Green, 836 F.2d 845, 848 (4th Cir. 1988) ("[t]he plaintiff's own naked opinion, without more, is not enough to establish a prima facie case of discrimination.").  The court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette, 133 F.3d at 299 (internal citation omitted).  Plaintiff has failed to introduce sufficient evidence to generate a factual dispute that he was meeting defendant's legitimate performance expectations at the time of his termination.

### ii. Similarly Situated Trainees

As to the fourth element of the McDonnell Douglas test, plaintiff argues that he was treated less favorably than similarly situated younger trainees.  (ECF No. 31 at 23).  Plaintiff identifies eight potential comparators.  (ECF No. 31 at 23-30).  Defendant counters that plaintiff points to no evidence that these trainees were similarly situated, and therefore, none can serve as comparators for purposes of establishing disparate treatment.  (ECF No. 25-1 at 23).  "Although courts do not always require comparator evidence, a plaintiff . . . who bases her disparate treatment claim entirely upon a comparison to an employee from outside the protected class 'must

demonstrate that the comparator was "similarly situated" in all relevant respects.'"  Williams v. Silver Spring Volunteer Fire Dept., 86 F. Supp. 3d. 398, 420 (D. Md. 2015) (quoting Sawyers v. United Parcel Serv., 946 F. Supp. 2d 432, 442 (D. Md. 2013)).  In order to show that a comparator is "similarly situated," a plaintiff must present "evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Id. (citation omitted).

Plaintiff's primary argument is that he was treated disparately when he was injured in the course of training and placed on desk duty.  (ECF No. 31 at 27).  Defendant argues that no comparison can be made between plaintiff and his fellow trainees because no other trainee injured during the Academy was placed on desk duty by a medical provider.  (ECF No. 41 at 16).  On April 19, 2018, during week 14 of the Academy, plaintiff suffered a knee contusion.  (ECF No. 31 at 27).  After reporting his injury, plaintiff was driven to see a County physician, Dr. Vaghela, who provided him with a Physician's Certification which stated, in relevant part, that plaintiff "[i]s currently **not able** to perform full duty as a Firefighter, but is able to perform restricted duty capacity in an administrative/office/sedentary setting on a full time basis."  (ECF No. 25-10). Dr. Vaghela's note specifically stated that plaintiff was limited to "desk work only, no structural firefighting work."  (Id.)  As a result, Chief Sanchez assigned plaintiff to a desk in an administrative building and instructed that he perform administrative work until he could rejoin the training class. (ECF No. 25-1 at 6).

Plaintiff contends that because other trainees experienced injuries but were not placed on desk duty, plaintiff's assignment to the administrative office is evidence of age discrimination. (ECF No. 31 at 29).  Plaintiff refers to several trainees, including Trainee Uqdah who experienced

a "very significant injury that required him to be transported to Howard County General Hospital" and caused him to miss several days of training, as well as Trainees Savage, Rohrer, and Besseck who also experienced injuries, but were "permitted to remain in the classroom, keep their books, and engage in study."  (Id.)  Plaintiff presents no evidence as to what, if any, conditions were placed on these trainees by health care providers.  Indeed, plaintiff offers no evidence that any other trainee was limited to desk duty by their evaluating physician during the course of training. Plaintiff's mere assertion, without adequate evidentiary support, that younger employees received more favorable treatment does not provide the evidence required to establish disparate treatment. See Purchase v. Astrue, 324 Fed. App'x 239, 242 (4th Cir. 2009) (deeming an allegation that "similarly situated white employees" were treated differently to be conclusory and insufficient to establish a genuine issue of material fact).  Accordingly, plaintiff has failed to establish that these comparators are similar in all relevant respects. See Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (requiring a showing that a plaintiff is "similar in all relevant respects to his comparator.").

Additionally, plaintiff highlights the poor performance of Trainee M., who "had significant issues with mazes and connecting his breathing apparatus."  (Id. at 23-24).  Plaintiff contends that it is indicative of discriminatory age bias that plaintiff, and not Trainee M., was terminated.  (Id.) Plaintiff also identifies as a potential comparator Trainee Wilson, the only trainee older than plaintiff, and the only other trainee to receive a Student Counseling Form for insubordination.  (Id. at 24).  Trainees M. and Wilson are not suitable comparators because, as plaintiff notes in his Response, Trainees M. and Wilson resigned from the Academy.  (Id. at 24-25).  Thus, even when viewing the facts in the light most favorable to plaintiff, Trainee M., a younger employee who arguably exhibited performance issues like plaintiff, was offered the opportunity to resign—and

did resign—when the Department determined that he would be unable to attain the skills needed to advance in the Academy.[5]   (ECF No. 41 at 19).   Similarly, Trainee Wilson, who received counseling on insubordinate behavior, like plaintiff, was offered the opportunity to resign—and did resign.  (ECF No. 31 at 25).  The circumstances surrounding the departures of Trainees M. and Wilson do not aid plaintiff's case.  To the contrary, they demonstrate that employees who experienced continuous performance issues or behavioral issues were encouraged to leave the Academy or risk termination.

Further, plaintiff relies on Trainees Rohrer or Wood as potential comparators who received more favorable treatment by defendant.  (ECF No. 31 at 26-27).  Trainee Rohrer is alleged to have "engaged in significant bullying tactics against Trainee Savage," (ECF No. 31 at 26), and Trainee Wood is alleged to have been "involved in a dangerous incident where he and his squad forgot to connect a hose line."  (Id.)  In order to serve as comparators, plaintiff must establish that Trainees Rohrer and Wood "engaged in the same conduct [as plaintiff] without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (citation omitted).  Here,  plaintiff's behavior issues, which form part of defendant's reason for plaintiff's termination did not relate to his interactions with other trainees. Instead, defendant asserts that plaintiff struggled to take criticism and feedback and behaved insubordinately towards his superiors.  (ECF No. 25-1 at 15). Therefore, plaintiff did not engage in the same conduct as Trainee Rohrer.  In addition, while plaintiff had trouble determining whether the nozzle was in the correct position, it is undisputed that plaintiff was not involved in any incident similar to that of Trainee Wood, but was involved in other incidents described herein.  (Id. at 10).  Thus, plaintiff has failed to offer any evidence that

---

[5] Plaintiff alleges in his Complaint that he was given an opportunity to resign prior to his termination, but declined to resign.  (ECF No. 1 at ¶ 29).  Neither party addresses this issue in their briefs.

Trainees Rohrer and Wood were similarly situated to him.  See Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators must be clearly established in order to be meaningful.").  In the absence of any evidence that plaintiff is similarly situated to Trainees Rohrer and Wood, these trainees cannot serve as similarly-situated comparators.

Finally, plaintiff asserts that many trainees had issues with ladders, but that deficiency was only "weaponized against" plaintiff and no other trainee.  (ECF No. 31 at 23).  Specifically, plaintiff argues that while Trainees Avery and Savage struggled with ladders and required coaching, their performance did not result in termination.  (Id.)  Defendant responds that there are significant factual differences in the behavior of Trainees Avery and Savage and plaintiff which undermine the extent to which plaintiff can rely on these Trainees as comparators, including that Trainee Savage did not require additional coaching outside of the classroom instruction and that, unlike plaintiff, there were no other areas of deficiency in either trainees' performance.  (ECF No. 41 at 17-18).  Plaintiff's argument regarding Trainees Savage and Avery is confined to a single paragraph in plaintiff's Response and offers no evidence to establish that Trainees Savage and Avery are adequate comparators.  (ECF No. 31 at 23).  Instead, plaintiff relies on general statements that ladder training was difficult for the trainees.  For example, in Trainee Savage's deposition, with respect to ladder tasks Trainee Savage stated that she "struggled," and "it was difficult," but she "got through it."  (ECF No. 31-10 at 8).  Contrary to plaintiff's assertion, however, Trainee Savage did not "get any more instruction than the class got" and she received no "special coaching."  (Id.)  It is undisputed that plaintiff required remedial coaching and spent additional time working with ladders.  (ECF No. 31 at 20).  Similarly, Trainee Avery recalls struggling with ladders at the beginning of Firefighter 1, but does not state that he quit or failed

any tasks.  (ECF No. 31-11 at 4).  While plaintiff asserts that he was treated differently than others who struggled with ladder tasks, plaintiff has not offered any evidence that these comparators had issues in the other areas, as did plaintiff, such as insubordinate behavior or maze issues. Accordingly, plaintiff has failed to establish the existence of similarly situated non-members who were treated more favorably than plaintiff, the fourth element of the McDonnell Douglas test.

### iii. Non-Discriminatory Reason for Termination and Pretext

Even if plaintiff had established a prima facie case of age discrimination, defendant has articulated legitimate, non-discriminatory reasons for plaintiff's termination, and plaintiff has not raised a genuine issue of material fact as to whether defendant's legitimate reason for his termination was a pretext for age discrimination.  Defendant contends that the Department terminated plaintiff due to his inability to perform the requirements of the job and his insubordination.  (ECF No. 25-1 at 24).  Plaintiff challenges defendant's reason for terminating him by summarily restating his earlier argument that he performed well on objective measures and had a good reputation among his fellow trainees.  (ECF No. 31 at 3-5).  It is well settled that poor performance is a legitimate, non-discriminatory reason for discharging an employee.  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (a history of poor job performance is a "legitimate, nondiscriminatory reason for the termination decision."); Evans v. Tech. Applications & Serv. Co., 80 F.3d 854, 960 (4th Cir. 1996) (poor job performance is a "widely recognized . . . valid, non-discriminatory bas[is] for any adverse employment decision); Hawkins, 203 F.3d at 280 (plaintiff's poor performance, supported by performance appraisal, was sufficient to establish non-discriminatory reason for termination).  "[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for

the plaintiff's termination.'"   Hawkins, 203 F.3d at 279 (quoting DeJarnette, 133 F.3d at 299). Here, defendant has provided a legitimate, non-discriminatory reason for plaintiff's termination and the burden shifts to plaintiff to establish that defendant's reasons were a pretext for discrimination.   Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 211 (4th Cir. 2014).

A plaintiff may meet his burden of establishing pretext by offering "circumstantial evidence that would call into question [defendant's] explanation for [the] termination of employment."   Id.   It is not enough to present evidence that plaintiff found defendant's action unfair or hurtful.   Johnson v. Toys "R" Us-Delaware, Inc., 95 Fed. App'x 1, 9 (4th Cir. 2004). Indeed, it is well established that "[i]n determining pretext in discrimination cases, courts are not called on to decide whether the defendant's conduct toward the plaintiff is reasonable, wise, or even fair; instead, courts must decide whether there is sufficient evidence showing that the proffered reason for the conduct is a dishonest one."   Id.   Plaintiff restates the same arguments as discussed above to establish pretext, including his satisfactory performance on objective criteria during the Academy, his own opinion of his performance, and the opinions of his fellow trainees. (Id.)   Plaintiff presents no evidence, however, to suggest that defendant's stated purpose for terminating plaintiff was pretextual.   Several members of Academy staff produced recommendations in support of plaintiff's termination based upon plaintiff's deficiencies in a number of areas.   (ECF Nos. 25-11 at 3, 25-17, 25-18, 25-19).   Plaintiff's own belief that he was performing effectively and the opinion of his fellow trainees are insufficient to call into question defendant's reasons for terminating plaintiff.   In sum, plaintiff has failed to establish that his age was the "but-for cause" of his termination and that defendant's stated, non-discriminatory reasons for plaintiff's termination were a pretext for discrimination.   See Gross, 557 U.S. at 176 (plaintiff has to show "by a preponderance of the evidence," that age was the "but-for cause" of his

discharge).  Thus, plaintiff has failed to offer evidence to create a genuine factual dispute as to whether his employer discriminated against him on the basis of age.  Accordingly, defendant's Motion for Summary Judgment (ECF No. 25) is granted.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, defendants' Motion for Summary Judgment (ECF No. 25) is GRANTED.  A separate order will follow.


Date: August 17, 2023                                             /s/_____
                                                                                      Beth P. Gesner
                                                                                      Chief United States Magistrate Judge